IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARK WAYNE RAMSEY | : | No. 19-268 |

### MEMORANDUM

PRATTER, J.                                                                                                                                     MAY 4, 2020

Following an interview with two FBI special agents at his home, Mark Ramsey turned over his laptop and cell phone and signed a consent to search form for both devices. Early the next morning, he called one of the agents to revoke his consent to search the laptop. The agents stopped the imaging of the laptop's hard drive but retained the laptop for six hours until a search warrant was obtained.

Mr. Ramsey moves to suppress any evidence found on his laptop and cell phone. He claims that any consent given was involuntary and the post-revocation warrantless continued seizure of his laptop violated his rights under the Fourth Amendment. The Government opposes, arguing that Mr. Ramsey's consent was voluntary and any subsequent warrantless seizure of his laptop was done with probable cause to prevent the destruction of evidence and was reasonable under the totality of the circumstances.

Following an evidentiary hearing that permitted the Court's assessment of the witnesses' credibility and the inherent plausibility of the events in question and oral argument, and upon review of the briefing and applicable case law, the Court denies Mr. Ramsey's motion to suppress.

## FINDINGS OF FACT[1]

In the afternoon of Monday, July 11, 2016, FBI Special Agents Patrick Duffy and Patricia Curran arrived at Mr. Ramsey's apartment at 3737 Chestnut Street in Philadelphia. After making contact with Mr. Ramsey at his front door and identifying themselves as FBI agents, the agents asked Mr. Ramsey if they could speak with him. Mr. Ramsey agreed, at which point the agents and Mr. Ramsey moved to conduct an interview a common area of the apartment complex chosen by Mr. Ramsey.

The interview lasted for at least 30 minutes but not more than two hours. During that time, the agents questioned Mr. Ramsey in connection with an investigation they were conducting concerning Mychal Kendricks relating to mail fraud, wire fraud, and securities fraud. Having received information from a confidential informant that Mr. Ramsey may have been communicating with or about Mr. Kendricks through text messages and phone calls, the agents asked Mr. Ramsey whether they could see any electronic devices he had. Mr. Ramsey agreed and left the common area to retrieve his laptop and cell phone from his apartment.

Upon Mr. Ramsey's return to the common area, the agents asked Mr. Ramsey for his consent to search his devices. They provided Mr. Ramsey with two consent to search forms, one for the laptop and one for the cell phone, and asked for his consent in writing. The agents did not tell Mr. Ramsey that he could refuse their request. Mr. Ramsey signed both forms and provided the agents with the password to his computer. The agents informed Mr. Ramsey that the devices would be taken to be processed and returned as soon as possible. The interview concluded and Agent Duffy took possession of the devices.

---

[1] The Court finds the following facts based on evidence presented at the evidentiary hearing.

2

At 6:45 AM the next day, Agent Duffy delivered Mr. Ramsey's devices to the Philadelphia Regional Computer Forensics Laboratory so that the hard drives could be copied, or "imaged."[2] At 7:30 AM, Mr. Ramsey called Agent Duffy and revoked his consent to search the laptop, asking that it be returned as soon as possible for work purposes. Agent Duffy called the laboratory and had the lab immediately cease the imaging of Mr. Ramsey's laptop.

Agent Duffy then called Agent Curran to inform her that Mr. Ramsey had revoked his consent to search the laptop, at which point Agent Curran prepared an application for a search warrant. United States Magistrate Judge David Strawbridge issued a search warrant for the laptop, and Agent Duffy served a copy of the warrant on Mr. Ramsey at 1:35 PM that day. Mr. Ramsey's laptop was returned at 6:45 PM, 12 hours after it was delivered to the lab, after the imaging was complete. Slightly more than 24 hours had passed since the agents had met with Mr. Ramsey.

## DISCUSSION

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures. U.S. CONST. amend. IV. The touchstone of Fourth Amendment analysis is "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms*, 434 U.S. 106, 108–09 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Id.* at 109 (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). If "the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or

---

[2] Agent Duffy was unable to deliver the devices to the laboratory the same day as the interview because it was located approximately 45 minutes away from the interview location and would have been closed by the time he would have arrived.

3

seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (citing *United States v. McKneely*, 6 F.3d 1447, 1453 (10th Cir. 1993)).

"It is . . . well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *United States v. Price*, 558 F.3d 270, 277 (3d Cir. 2009) (alteration in original) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The burden of proving that the consent was "freely and voluntary given" rests with the Government. *Id.* (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). Voluntariness is determined by the totality of the circumstances, but "[f]actors to consider include: the age, education, and intelligence of the subject; whether the subject was advised of his or her constitutional rights; the length of the encounter; the repetition or duration of the questioning; and the use of physical punishment," as well as "the setting in which the consent was obtained and the parties' verbal and non-verbal actions." *Id.* at 278 (citations omitted). "[T]he Government is not 'required to advise the defendant of his right to refuse consent before eliciting his consent.'" *Id.* at 279 (quoting *United States v. Kim*, 27 F.3d 947, 955 (3d Cir. 1994)).

However, "a seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable seizures.'" *United States v. Jacobsen*, 466 U.S. 109, 124 (1984). In analyzing the reasonableness of the Government's conduct, the Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 125 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)).

Finally, a warrantless seizure may not violate the Fourth Amendment where law enforcement has probable cause and certain exigent circumstances exist, such as preventing the

4

destruction of evidence. *See United States v. Smith*, 919 F.3d 1, 14 (1st Cir.), *cert. denied*, 140 S. Ct. 203 (2019) (finding law enforcement officer's representation that officers could detain suspect's computer based on his admission that it contained child pornography accurate because "[i]t is well established that the threat of destruction of evidence is an exigent circumstance that permits law enforcement to conduct a warrantless seizure of property" and there was a "possibility that [the suspect] would seek to wipe the child pornography from his computer and hard drives in the agents' absence"); *United States v. Henry*, 827 F.3d 16, 28 (1st Cir. 2016) ("It thus appears that the officers did exactly what the Supreme Court suggested they do: seize the phones to prevent destruction of evidence but obtain a warrant before searching the phones.").

Here, Mr. Ramsey claims that Agents Curran and Duffy seized his laptop and cell phone without his consent because the consent he provided was involuntary and the forms he signed only authorized a search, not a seizure. He also asserts that any consent given for the laptop was unquestionably revoked when he called early the next day and he asked for it to be returned immediately, but the agents unconstitutionally kept it for approximately six hours without a warrant. The Government responds that Mr. Ramsey's consent was voluntarily given, and after he revoked his consent for the laptop, the Government's continued seizure was nonetheless constitutional because it was supported by probable cause and exigent circumstances, and a warrant was obtained in a reasonable amount of time.

I.  **Whether Mr. Ramsey Voluntarily Consented**

Mr. Ramsey argues his consent was involuntary because he provided his laptop and cell phone in response to a "claim of lawful authority" and was "simpl[y] acquiescenc[ing] to what any reasonable person would have perceived, under the circumstances." Mot. to Suppress 2–3 (quoting *United States v. Weidul*, 325 F.3d 50, 54 (1st Cir. 2003)). He alleges that Agent Curran's demeanor

5

during the interview was stern, blunt, and aggressive, and the agents directed him to retrieve his devices and told him where to sign the consent forms. Mr. Ramsey claims that he did not read the consent forms, he did not know he could refuse to sign them, and he only signed where the agents directed. Mr. Ramsey also argues that the consent forms he signed only provided consent to search, not seize, his devices.

The Government responds that the totality of the circumstances support finding that Mr. Ramsey's consent was voluntary. The Government argues that Mr. Ramsey was an adult without any alleged intellectual disabilities, only two agents were present, there was no physical intimidation or punishment, he was questioned in the public area at his apartment complex, he was not in custody and was free to leave at any time, he left the common area and retrieved the devices himself, and he signed consent to search forms acknowledging that his consent was freely given. The Government also argues that although the agents did not advise Mr. Ramsey of his right to refuse consent can be considered in determining whether his consent was voluntarily given, this in and of itself does not render his consent involuntary.

The Court finds that the Government has met its burden to prove that Mr. Ramsey voluntarily consented. Although the agents did not inform Mr. Ramsey that he could refuse to give his consent, which cuts against a finding of voluntariness, both consent to search forms included the following straightforward statement: "I have been advised of my right to refuse to consent to this search, and I give permission for this search, freely and voluntarily, and not as the result of threats or promises of any kind." Mot. to Suppress Ex. A. This statement was sufficient to at least put Mr. Ramsey on notice of his right to refuse.[3] *See, e.g., United States v. Aker*, No.

---

[3] Mr. Ramsey alleges that he did not read the consent to search forms because Agent Curran was blunt and aggressive and he simply signed where she pointed on the forms. None of these facts leads the Court to conclude that Mr. Ramsey was in a position where he could not read the forms if he chose to do so. And even if Mr. Ramsey did not read the forms, the Court's conclusion remains unchanged because

6

16-00206, 2018 WL 501001, at *8 (M.D. Pa. Jan. 22, 2018) (finding that warning on consent form stating, "I have been told that I do not have to give my consent. I have the right to refuse this request, and that the police may not be able to conduct this search without a search warrant unless I give my consent" was "sufficient to notice Defendants of their right to refuse and weighs heavily in favor of finding that the consent was voluntary") (citation omitted).

Even if Mr. Ramsey was not informed of his right to refuse consent, the relevant factors of this interaction between the agents and Mr. Ramsey lead the Court to conclude that his consent was voluntarily given. Although Agent Curran's demeanor may well have been stern and aggressive, the totality of the circumstances demonstrates a non-coercive environment: Agent Curran and Agent Duffy were the only law enforcement agents present, the interview took place in a public area at Mr. Ramsey's own apartment complex and he had chosen where in the complex the interview would take place, he was never under arrest and was free to leave at any time, he was not subject to any physical force or intimidation, he was not told that he must consent to the search, and he signed two separate forms that were each titled in large letters "CONSENT TO SEARCH COMPUTER[S]." Under these facts, and recognizing that there is no support for the notion that a law enforcement officer ought to be jovial or even friendly in order to be within her or his proper scope of duties, the Government has met its burden to prove that Mr. Ramsey's consent was voluntary. *See, e.g., United States v. Vaghari*, 500 F. App'x 139, 149 (3d Cir. 2012) (finding consent voluntary where the suspect was "forthcoming throughout their meeting," he "was never arrested, handcuffed, or even touched, and the agents neither threatened nor promised anything to him," and "the encounter took place during daylight hours on [his] own property . . . suggesti[ng] a low-key, non-coercive atmosphere").

---

"the Government is not 'required to advise the defendant of his right to refuse consent before eliciting his consent.'" *Price*, 558 F.3d at 279 (quoting *Kim*, 27 F.3d at 955).

7

The Court also finds that Mr. Ramsey's contention that any consent he gave, involuntary or otherwise, was only to search the devices and not to seize them lacks merit. Although the forms Mr. Ramsey signed were labeled "Consent to Search," the forms also included language that Mr. Ramsey "own[ed], possess[ed], control[led], and/or ha[d] access to" the devices, and that he "authorize[d] those Agents to take any evidence discovered during this search, together with the medium in/on which it is store, and any associated data, hardware, software and computer peripherals." Mot. to Suppress Ex. A. As a matter of common understanding, the word and concept of "take" certainly is compatible with the word and concept of "seizure." Furthermore, the agents explicitly informed Mr. Ramsey that to conduct a search of his devices, they would need to take the devices to another location. Upon learning that information, Mr. Ramsey did not attempt to withhold consent or withdraw any consent already given. Although he noted that he would need his devices back as soon as possible, he freely gave them to the agents for them to take and search.

## II. Whether the Post-Revocation Seizure was Unconstitutional

Mr. Ramsey argues that the agents should have returned his laptop immediately after he revoked his consent to search it. He claims that their failure to do so constituted a warrantless seizure of his laptop, which "is the digital equivalent of its owner's home, capable of holding a universe of private information." *United States v. Mitchell*, 565 F.3d 1347, 1352 (11th Cir. 2009) (citing *State v. Rupnick*, 125 P.3d 541, 552 (Kan. 2005)). Arguing that no exigent circumstances existed to justify such a seizure, he asks the Court to find the seizure unconstitutional and suppress any resulting evidence.

The Government responds that the agents had probable cause to seize the laptop because, during the July 11, 2016 interview at his apartment, Mr. Ramsey admitted that he made trades on

Mr. Kendricks' behalf, that he communicated with the source of the insider information over text messages and FaceTime to discuss Kendricks' trades, and that those text messages were backed up on his laptop. Because Magistrate Judge Strawbridge found this information sufficient to establish the probable cause necessary to issue a search warrant, the Government contends it logically follows that the Government also had probable cause to seize the laptop.[4] *See United States v. Respress*, 9 F.3d 483, 486–87 (6th Cir. 1993) ("If there was probable cause to *search* the suitcase, there was ipso facto probable cause to *seize* the suitcase."). The Government also argues that exigent circumstances required seizing the laptop until a warrant could be obtained because, had the FBI returned it, Mr. Ramsey would have had the opportunity to destroy any evidence of

---

[4] The Court notes that Mr. Ramsey raises a separate argument that the search warrant was invalid because it relied on an intentional or reckless false statement. He claims that his alleged statement that text messages were backed up on his laptop was the only fact in Agent Curran's affidavit in support of the search warrant that could support a finding of probable cause. He argues, however, that this same alleged statement regarding the text messages was not included in the agents' rough notes or the formal 302 of his interview, making its presence in Agent Curran's affidavit of probable cause problematic. Mr. Ramsey also notes that the text messages found on his computer were not in fact "backed up" from his phone but came from an iMessage database that contemporaneously synced his messages across his devices. He argues that this fact makes it highly unlikely he would have made a statement that his text messages were "backed up."

Mr. Ramsey's arguments are unavailing. The agents' rough notes and the 302 are summaries of Mr. Ramsey's interview. They are neither recorded statements nor word-for-word transcripts. That Mr. Ramsey's statement regarding the text messages being backed up was omitted from the summary documents does not suggest that the statement was false when included in the affidavit of probable cause.

Furthermore, Mr. Ramsey's strict interpretation of the term "backed up" is mere semantics. Mr. Ramsey's text messages from his cell phone were synced to his laptop. A person could reasonably describe the process that synced the devices as a "back up" even if that is not the exact technical terminology for how the text messages appeared on both devices simultaneously. Certainly people and tech companies as well employ a host of different terms, words, icons, and the like to describe functions. No one word or phrase can precisely control a matter such as this. Rather, the overall events are more instructive.

In addition to asking the Court to suppress the evidence from his devices, Mr. Ramsey also relies on these arguments to ask the Court for a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978). To be entitled to a *Franks* hearing, Mr. Ramsey must "make[] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [] the allegedly false statement [was] necessary to the finding of probable cause." *Franks*, 438 U.S. at 155–56. For the reasons just stated, Mr. Ramsey has failed to make such a showing, and his request for a *Franks* hearing is denied.

insider trading. Noting the seizure only lasted for six hours until the warrant was issued, the Government asserts that the seizure was reasonable.

The Government's seizure of the laptop after Mr. Ramsey revoked his consent was constitutional. In *United States v. Laist*, 702 F.3d 608 (11th Cir. 2012), the Government seized the defendant's laptop after obtaining his consent to search the device. The defendant revoked his consent a week later, at which point the FBI began preparing a warrant affidavit and application. The Government kept the laptop for 25 days until it obtained a warrant and could search the laptop and hard drives. In holding that the 25-day delay was not unreasonable, the Eleventh Circuit Court of Appeals explained that the defendant had "a significant possessory interest in his computer and his hard drives," but (1) that possessory interest was diminished and the Government's "legitimate interest in maintaining custody of the computer" was increased when the defendant "admitted to the presence of illicit images on the computer," and (2) the Government diligently obtained a warrant by starting the process the same day it received the notice that the defendant had revoked consent. *Laist*, 702 F.3d at 616–17 (citations omitted).

Here, Mr. Ramsey acknowledged that he had downloaded a spreadsheet of Mr. Kendricks' trades, that he was suspicious that the trades Mr. Kendricks engaged in were connected to insider trading, and that text messages discussing the Kendricks trades were on his laptop. The Government also applied for a search warrant immediately after Mr. Ramsey revoked his consent, and the Government then held the laptop for only six hours. Furthermore, the fact that Mr. Ramsey knew at the time that he revoked consent that the Government wanted to search the laptop for evidence greatly increased the risk that he would attempt to remove any such evidence from the laptop had it been returned before a search could be completed. For all of these reasons, the Court

10

finds that the Government's six-hour seizure of the laptop was supported by probable cause and was reasonable under the totality of the circumstances.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Ramsey's motion to suppress. An appropriate order follows.

BY THE COURT:

*Gene E.K. Pratter*

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE