# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MARK WAYNE RAMSEY** | : | **No. 19-268** |

## MEMORANDUM

PRATTER, J.                                          SEPTEMBER _17th_, 2021

### INTRODUCTION AND BACKGROUND

Mark Wayne Ramsey moves to dismiss Counts 6 through 10 of the United States' superseding indictment. Mr. Ramsey argues that the Government fails to assert that he committed any offense under 18 U.S.C. §§ 1348 and 1349. For the reasons that follow, the Court denies Mr. Ramsey's motion.

On May 9, 2019, Mark Wayne Ramsey was indicted on charges of conspiracy and securities fraud for his alleged role in trading securities in violation of securities regulations and various statutory provisions. Specifically, the Indictment alleges that Mr. Ramsey, along with Marvin Mychal Kendricks and Damilare Sonoiki, conspired to commit securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2 (Count 1) and that Mr. Ramsey committed securities fraud in violation of 15 U.S.C. §§ 78j(b) and 78ff and 17 C.F.R. §§ 240.10b-5 and 240.10b5-2 in four separate transactions (Counts 2-5). As pertinent to Mr. Ramsey's motion, the Indictment also alleges that Mr. Ramsey, along with Mr. Kendricks and Mr. Sonoiki, conspired to commit securities fraud in violation of 18 U.S.C. § 1349 (Count 6) and that Mr. Ramsey committed securities fraud in violation of 18 U.S.C. § 1348 in the same four separate transactions noted above (Counts 7-10).

The Government contends that Mr. Ramsey traded in options contracts on behalf of Mr. Kendricks. Mr. Ramsey was allegedly given the password to Mr. Kendrick's OptionsXpress account (a specialized online service provided by Charles Schwab Corporation for trading options contracts) and he and Mr. Kendricks allegedly received information, directly and indirectly, from Mr. Sonoiki, who then worked as an associate at a global investment bank. According to the Indictment, Mr. Sonoiki passed confidential information to both Mr. Kendricks and Mr. Ramsey about upcoming transactions involving mergers and acquisitions by and of companies that his bank represented. The Indictment further alleges Mr. Kendricks provided Mr. Ramsey "with cash and living expenses in return for. . . trading in nonpublic information" provided by Mr. Sonoiki. The Indictment charges that the information provided by Mr. Sonoiki allowed Mr. Ramsey, Mr. Kendricks, and Mr. Sonoiki to purchase "call" options contracts that dramatically increased in value after the public announcement of those same pending transactions, leading to overall profits of approximately $1,198,075.

Mr. Ramsey moved to dismiss Counts 6 through 10 of the Indictment, claiming that the Government had failed to allege what Mr. Ramsey asserted was an element of an offense under § 1348. The Government filed its timely opposition to the motion, disputing the argument that there was any such additional element to an offense under § 1348. Mr. Ramsey then filed his reply, leaving the matter ripe for the Court's resolution in advance of the scheduled trial.

## LEGAL STANDARD

Mr. Ramsey moved to dismiss Counts 6 through 10 for "failure to state a claim." The Court will construe this as a motion to dismiss based on "a defect in the indictment" for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B).

An indictment is legally sufficient if it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)). This is not a particularly onerous standard, and the Third Circuit Court of Appeals has held that "[a]n Indictment should be upheld 'unless it is so defective that it does not, by any reasonable construction, charge an offense.'" *United States v. Islam*, No 20-CR-00045, 2021 WL 963580 (E.D. Pa. Mar. 15, 2021) (quoting *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016)).

A defendant may challenge the sufficiency of an indictment under Federal Rule of Criminal Procedure 12(b)(3)(B) in a number of ways, such as by asserting that "the indictment 'fails to charge an essential element of the crime'" or that that the alleged facts "fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Brennan*, 452 F. Supp. 3d 225, 230–31 (E.D. Pa. 2020) (quoting *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013)). Under either theory, the defendant claims that an indictment is legally infirm because it "fails to state an offense." *See Vitillo*, 490 F.3d at 321.

"A court's review of a motion to dismiss an indictment 'is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury.'" *Stock*, 728 F.3d at 292 n.4 (quoting *United States v. Bergrin*, 650 F.3d 257, 268 (3d Cir. 2011)). The Court is not permitted to consider the "sufficiency of the government's evidence," *id.* (quoting *Bergrin*, 650 F.3d at 265); rather, the "court [must] accept[ ] as true the factual allegations set forth in the indictment." *Bergrin*, 650 F.3d at 265 (quoting *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990)).

DISCUSSION

Mr. Ramsey appears to argue that Counts 6 through 10 fail to state an offense under 18 U.S.C. §§ 1348 and 1349 because the "Title 18 fraud offenses," including the securities and commodities fraud statutes at issue here, only prohibit "schemes to deprive an identified victim of money or property and obtain it for oneself or another." Doc. No. 108, at 2. According to Mr. Ramsey, because 18 U.S.C. § 1348 was modeled on the mail and wire fraud statutes, and because, according to Mr. Ramsey, the mail and wire fraud statutes prohibit only schemes to deprive a victim of money or property, "[t]he *object* of a Title 18 fraud scheme must be the taking of property *from the victim*." Doc. No. 108, at 4 (emphasis in original). In other words, Mr. Ramsey seems to assert that one element of an offense under § 1348 is that the "object of any scheme must be the taking of property *from the victim*." Doc. No. 108, at 4. The Court is not persuaded by Mr. Ramsey's sweeping argument that precedent construing the mail and wire fraud statutes applies to all fraud schemes charged under Title 18.

The Court's analysis has two alternatives: first, the Court analyzes Mr. Ramsey's argument as a matter of statutory interpretation; second, the Court assumes *arguendo* that Mr. Ramsey's theory of § 1348 is acceptable and then analyzes his argument accordingly.

I.      **Mr. Ramsey's Argument Fails as a Matter of Statutory Interpretation**

First, as a matter of statutory interpretation, Mr. Ramsey's argument cannot stand. The securities fraud statute at issue here, while similar to the mail and wire fraud statutes, is not identical to them. The Court begins with the language and precedential interpretation of § 1348. Section 1348 makes it a crime:

> (1) to defraud any person in connection with any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under section 12 of the Securities

Exchange Act of 1934 (15 U.S.C. 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)); or

(2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of any commodity for future delivery, or any option on a commodity for future delivery, or any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78*l*) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78*o*(d)).

While § 1348 contains two subsections, the Government "need only prove one of § 1348's two subsections." *United States v. Hatfield*, 724 F. Supp. 2d 321, 324 (E.D.N.Y. 2010); *see also United States v. Mahaffy*, No. 05-CR-613, 2006 WL 2224518, at *11 (E.D.N.Y. Aug. 2, 2006) ("As a threshold matter, the government clearly need only prove a violation of subsection (1) or subsection (2), but not both, for there to be a violation of Section 1348") (citing *United States v. Chandler*, 98 F.3d 711, 714 (2d Cir. 1996)).

Courts have clarified the required elements of an offense under each subsection. Under the first subsection of § 1348, the Government must prove "(1) 'fraudulent intent'; (2) 'a scheme or artifice to defraud'; and (3) 'a nexus with a security.'" *Hatfield*, 724 F. Supp. 2d at 324 (quoting *Mahaffy*, 2006 WL 2224518, at *12). The second subsection of § 1348 is different. Under § 1348(2), the Government must prove "(1) a scheme or artifice; (2) 'to obtain, by means of false or fraudulent pretenses, representations, or promises, any money or property;' while possessing (3) fraudulent intent." *Id.* (quoting 18 U.S.C. § 1348(2)).

Mr. Ramsey is, of course, correct that § 1348 is "modeled" on the mail and wire fraud statutes. *See United States v. Motz*, 652 F. Supp. 2d 284, 296 (E.D.N.Y. 2009).[1] Indeed, the language of § 1348(1) mimics the language in the mail and wire fraud statutes.[2] What Mr.

---

[1] The Court notes that the *Motz* Court made this observation in the context of analyzing the element of "fraudulent intent," which is the only element common to §§ 1341, 1343, and 1348.

[2] *Compare* 18 U.S.C. § 1348(1) ("Whoever knowingly executes, or attempts to execute, a scheme or artifice to defraud any person in connection with any commodity for future delivery, or any option on a commodity for future

Ramsey's argument fails to recognize, however, is that the statutes are not *identical*. Section 1348 contains two subsections that are both narrower and broader than the mail and wire fraud statutes in certain critical respects.

To start, the language of the mail and wire fraud statutes is notably different. The mail fraud statute, § 1341, begins, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property. . ." and the wire fraud statute, § 1343, similarly begins, "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property. . . ." *See* 18 U.S.C. §§ 1341, 1343. It is this disjunctive language that the Supreme Court interpreted in *Carpenter v. United States* and *Kelly v. United States* and that is central to Mr. Ramsey's argument. The *Kelly* Court, most recently and perhaps most clearly, explained that, "[c]onstruing that disjunctive language as a unitary whole, this Court has held that 'the money-or-property requirement of the latter phrase' also limits the former. The wire fraud statute thus prohibits only deceptive 'schemes to deprive [the victim of] money or property.'" *Kelly v. United States*, 140 S. Ct. 1565, 1571 (2020) (brackets in original) (quoting *McNally v. United States*, 483 U.S. 350, 358, 356 (1987)). As a result, under § 1341 and § 1343, the mail and wire fraud statutes, the Government must prove (1) a scheme to defraud with money or property as the object of that scheme (2) participation by a defendant in that scheme with specific intent to defraud and (3) use of the wires or of the mails to accomplish that scheme. *See United States v. Burks*, 867 F.2d 795, 797 (3d Cir. 1989).

---

delivery. . .") *with* 18 U.S.C. § 1341 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses. . .") *and* 18 U.S.C. § 1343 ("Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses. . . causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce. . .").

The statute at issue here, § 1348, differs significantly from the mail and wire fraud statutes. Section 1348(1) makes no mention of money or property and it is not a required element of the offense to have money or property be the object of the scheme under § 1348(1). *See* 18 U.S.C. § 1348(1); *Hatfield*, 724 F. Supp. 2d at 324 (stating elements of an offense under § 1348(1)). In other words, the language that *Kelly* construed, and that Mr. Ramsey contends should apply with force to this case, simply does not exist in § 1348(1). Second, § 1348(1) is narrower than the mail and wire fraud statutes because any charged "scheme to defraud" under § 1348(1) must have "a nexus with a security,'" while the mail and wire fraud statutes are not so limited.[3] *See* 18 U.S.C. § 1348(2); *Hatfield*, 724 F. Supp. 2d at 324 (citation omitted).

Section 1348(2), too, is different from the mail and wire fraud statutes in that it is much broader. Section 1348(2) is much broader in that it does not require a scheme "to defraud" as do the mail and wire fraud statutes. *Compare* 18 U.S.C. § 1348(2) *with* 18 U.S.C. §1341 *and* § 1343. Instead, § 1348(2) plainly prohibits any scheme "to *obtain*, by means of false or fraudulent pretenses, representations, or promises, *any* money or property in connection with the purchase or sale of any commodity for future delivery, or any option on a commodity for future delivery. . . ." 18 U.S.C. § 1348(2) (emphasis added); *see also Hatfield*, 724 F. Supp. 2d at 324 (citation omitted) (listing the elements of an offense under §1348(2)).[4]

In other words, Mr. Ramsey seems to be arguing that one element of the wire and mail fraud statutes, namely, that the object of a scheme to defraud be money or property, should apply

---

[3] Despite this different element, the language is still quite broad. *See Mahaffy*, 2006 WL 2224518, at *12 ("[I]t simply requires that the government prove that the scheme to defraud was designed 'in connection' with a security. Stated another way, though not with the intention of identifying the outer boundary of the statute's application, the requirement that the scheme be 'in connection' with a security is satisfied where as a result of the scheme, the defendants either benefitted, or attempted to benefit, from trading in securities.").

[4] Indeed, the fact that § 1348 is different from §§ 1341 and 1343 likely was by design. Congress acted to "broaden the range of conduct proscribed by existing federal securities laws." *Motz*, 652 F. Supp. 2d at 294; *see also Mahaffy*, 2006 WL 2224518, at *12 (discussing the legislative history of § 1348).

to both subsections of § 1348. But, as just discussed, the required elements of an offense under § 1348(1) or § 1348(2) are not the same as §§ 1341 and 1343. To state the obvious, they are different statutes. Thus, there can be no real contention that *Kelly* imported an additional element into either § 1348(1) or § 1348(2).

This disagreement between Mr. Ramsey and the Government highlights the importance of word choice. Mr. Ramsey correctly cites *United States v. Motz* for the proposition that "'the text and legislative history of 18 U.S.C. § 1348 clearly establish that it was modeled on the mail and wire fraud statutes.'" 652 F. Supp. 2d at 284 (quoting *Mahaffy*, 2006 WL 2224518, at *11); *see* Doc. No. 108, at 2. True enough. But, the *Motz* Court went on to say only that the "the Court's analysis should be guided by the caselaw construing those statutes," not that it should be identical. *Id.* Indeed, when one follows the *Motz* Court's research trail, Mr. Ramsey's path all but disappears. *Mahaffy* stated even more tepidly only that "it is *useful to be guided* by the numerous and well-established precedents on [the mail and wire fraud] statutes in construing [§ 1348]." *Mahaffy*, 2006 WL 2224518, at *11 (emphasis added). In short, §§ 1341 and 1343 provided a model for § 1348, but § 1348 is not a facsimile of §§ 1341 and 1343. The precedent construing §§ 1341 and 1343 offers guidance, not additional elements of an offense under § 1348.

Second, Mr. Ramsey has neglected the significance of the fact that, unlike the mail and wire fraud statutes, § 1348 contains two separate subsections and the Government "need only prove one of § 1348's two subsections." *Hatfield*, 724 F. Supp. 2d at 324; *see also Mahaffy,* 2006 WL 2224518, at *11. In other words, to prove that the Government has failed to state any offense under § 1348, Mr. Ramsey would need to demonstrate that the Government has failed to state an offense under *both* § 1348(1) *and* § 1348(2). This hurdle, too, proves insurmountable for Mr. Ramsey.

Even if the Court were to accept Mr. Ramsey's argument, that one of § 1348's subsections had the additional required element of §§ 1341 and 1343 that the scheme to defraud must have money or property as the object of that scheme with, apparently, an identifiable victim, Mr. Ramsey's argument would still fail. In other words, even if this Court were to hold, for example, that § 1348(1)'s language requiring a "scheme or artifice to defraud" was similar to the mail and wire fraud statutes and thus included the additional element, Mr. Ramsey would still be unable to achieve dismissal of the charges because § 1348(2) provides an independent and sufficient basis for the Government to allege an offense. *See Hatfield*, 724 F. Supp. 2d at 724. Stated differently, the Court need only decide whether, accepting all factual allegations in the Indictment as true, the Indictment is legally sufficient under *either* § 1348(1) *or* § 1348(2). The Court finds that the Government has met this burden.

Indeed, there can be no question that the Indictment is legally sufficient. Reading the factual allegations set forth in the Indictment, *see Bergrin*, 650 F.3d at 265 (citation omitted), the Indictment contains the elements of the offense to be charged. *See Vitillo*, 490 F.3d at 321. Under the three required elements of § 1348(1), the Indictment sufficiently alleges that Mr. Ramsey acted with fraudulent intent, *see* Doc. No. 72 at 18–22, that Mr. Ramsey was part of a scheme, *see, e.g.*, Doc. No. 72 at 18, and that this scheme had a nexus with a security, *see, e.g.*, Doc. No. 72 at 2–6. Similarly, under the three required elements of § 1348(2), the Indictment sufficiently alleges that Mr. Ramsey acted with fraudulent intent, *see, e.g.*, Doc. No. 72 at 18, that Mr. Ramsey was part of a scheme, *see, e.g.*, Doc. No. 72 at 18, and that the scheme was to obtain money, *see, e.g.*, Doc. No. 72 at 8. Because the Indictment clearly alleges each element of both §§ 1348(1) and 1348(2), the Indictment is not legally insufficient. Because the Indictment further alleges the existence of a conspiracy to engage in this same scheme in violation of 18 U.S.C. § 1349, the Indictment is also

legally sufficient as to Count 6. Second, the Indictment sufficiently apprises Mr. Ramsey of what he "must be prepared to meet." *Vitillo*, 490 F.3d at 321. And, finally, the Indictment "allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution." *Id.* Therefore, the Government has met its burden of producing a legally sufficient indictment in this case and Mr. Ramsey's argument fails.

## II.   Assuming *Arguendo* Mr. Ramsey's Interpretation of § 1348 is Correct, the Court Still Rejects His Argument

While the Court's statutory interpretation explains the failure of Mr. Ramsey's motion to dismiss, the Court will briefly address Mr. Ramsey's creative argument more directly. Mr. Ramsey claims that the allegations against him "do not constitute a scheme to defraud a victim with the object of taking *the victim's* money or property." Doc. No. 108, at 3. Citing Supreme Court cases interpreting and construing the mail and wire fraud statutes, Mr. Ramsey asserts that the Indictment in this case does not fit within that precedent and, therefore, is legally insufficient. *See* Doc. No. 108, at 2–5. The Court sees this case as far more similar to one of the cases, *United States v. Carpenter*, than Mr. Ramsey would care to admit, and ultimately rejects his argument. To be absolutely clear, however, Mr. Ramsey's argument rests on there being an additional element under § 1348 that the Court has already rejected above. Nevertheless, the Court will entertain Mr. Ramsey's argument to further explain why it could not succeed.

In *Carpenter* the Supreme Court considered whether a scheme involving a Wall Street Journal reporter and two securities traders who profited from the reporter's leaking of the newspaper's proprietary information in advance of publication was within the reach of the mail fraud statute. The scheme involved a well-known financial reporter whose column was apparently trusted by members of the public to the point that its publication often affected stock prices. *See*

*Carpenter*, 484 U.S. at 22. This reporter entered into a scheme with two traders at a brokerage firm whereby he would release the articles to them early, allowing them to profit on the changes in the market caused by the later publication of the column. *See id.* The *Carpenter* Court explained that the "the words 'to defraud' in the mail fraud statute have the 'common understanding' of 'wrongdoing one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching.'" 484 U.S. at 26 (quoting *McNally*, 483 U.S. at 358). The Court held that the scheme "to trade on the Journal's confidential information is not outside the reach of the mail and wire fraud statutes" because "[t]he Journal's business information that it intended to be kept confidential was its property" and the defendants had specific intent to deprive the Wall Street Journal of that proprietary information. *Id.* at 28.

In *Kelly*, the Court considered whether the scheme to purposely limit traffic from Fort Lee on the George Washington Bridge in response to the mayor of Fort Lee's decision not to endorse then-Governor Chris Christie's presidential bid (colloquially known as "Bridgegate") fell within the mail and wire fraud statutes. The Court held that the public officials' actions in "Bridgegate" did not fall within the ambit of the wire fraud statute because the scheme was not directed at any money or property, but was "a quintessential exercise of regulatory power." *Kelly*, 140 S. Ct. at 1572. In coming to this conclusion, the Court discussed various ways that a scheme to abuse regulatory power could come within the mail or wire fraud statutes if, as the Court explained, a mayor used city workers to renovate his daughter's home or a park commissioner required city workers to do gardening work for his political contributors. *See id.* at 1573. However, the Court clarified that the loss to a victim of a property fraud scheme must be more than "an incidental byproduct of the scheme." *Id.*

Mr. Ramsey uses this distinction between *Kelly* and *Carpenter* to assert that misappropriation insider trading (whereby one with confidential information about other businesses uses that information for his own or others' benefit) harms only the general investing public and does not harm any specific victims in terms of money or property. Doc. No. 108, at 4. In other words, Mr. Ramsey asserts that his actions in this case are distinguishable from the reporter's actions in *Carpenter* because the scheme to receive information from Mr. Sonoiki's bank was only the "incidental byproduct" of the scheme, while the real object was making profits in the securities market. Again, the Court is not persuaded by Mr. Ramsey's argument.

First, as discussed at length above, the *Carpenter* and *Kelly* Courts construed the mail and wire fraud statutes, not § 1348. As a result, Mr. Ramsey's contention that *Carpenter* and *Kelly* construed § 1348 such that a charge under § 1348 requires the additional element that any scheme have as its object money or property cannot be sustained.

Second, even assuming for the sake of argument that *Carpenter* and *Kelly* construed § 1348 as Mr. Ramsey suggests, Mr. Ramsey's argument is still doomed. Mr. Ramsey is correct that the charge for mail and wire fraud in *Carpenter* was *only* for the misappropriation of the confidential information of the Wall Street Journal and not for its use. Here, Mr. Ramsey misappropriated confidential information from Mr. Sonoiki's investment bank *and* used it. Despite this difference, Mr. Ramsey's actions in this case are much closer to *Carpenter* than he acknowledges. To be sure, Mr. Ramsey's actions are, indeed, slightly different than the charge in *Carpenter* in that Mr. Sonoiki's information was not the *only* or *sole* object of the scheme as the Government apparently charged in *Carpenter*. *See Carpenter*, 484 U.S. at 24. It would defy common logic, however, to suggest that Mr. Ramsey's misappropriation of the information from Mr. Sonoiki's bank, and, by proxy, the businesses that confided in Mr. Sonoki's bank, was merely "incidental" to the scheme.

For, of course, without this information from Mr. Sonoiki, there would have been no scheme at all. The object of the scheme at issue here was *both* property in the form of the proprietary information *and* money in the form of profits from sales that would not have taken place but for the simultaneous scheming by Mr. Kendricks, Mr. Sonoiki, and Mr. Ramsey to acquire information from Mr. Sonoiki's bank and to use that information for their own profit. In short, to say the facts here are more like *Kelly* than *Carpenter* would be a bridge too far. Indeed, the charges of the scheme here satisfy even the creative reading of § 1348 that Mr. Ramsey suggests, which, to reiterate, is not what § 1348 requires. Therefore, the Court rejects Mr. Ramsey's argument.

## CONCLUSION

For the foregoing reasons, the Court denies the motion to dismiss.  An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**

13